**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Xcellerant Fund I LLC, et al.,<br>Plaintiffs,<br>v.<br>Tesis Biosciences LLC, et al.,<br>Defendants. | No. CV-25-02167-PHX-DLR<br>**ORDER** |

The following background is derived from the First Amended Complaint ("FAC") (Doc. 80) and presumed true for purposes of this order. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Tesis Biosciences, LLC ("Tesis") is a Delaware LLC that purported to specialize in conducting genetic testing using DNA sequencing to detect mutations in genes that could indicate a higher risk of developing certain types of diseases. (Doc. 80 ¶ 64.) Despite its representations, Tesis did not in fact have the requisite technology to perform the genetic testing and then fraudulently billed federally funded medical programs. (*Id.*)

Bradley Edson is a beneficial owner of Tesis through Keystone Advisors, LLC. (*Id.* ¶ 13.) Atomic Social, LLC and United Global, LLC are alter egos of Edson. (*Id.* ¶¶ 14–15.) Todd Stottlemyre ("T. Stottlemyre") was a co-founder and managing board member of Tesis. (*Id.* ¶ 17.) Erica Stottlemyre is the spouse of T. Stottlemyre (collectively, "the Stottlemyres"). (*Id.* ¶ 18.) Koibito Cares, Best Poke, LLC, Advanced Investing, LLC, Stott

Investment Group, LLC, Stottlemyre International, LLC, TVS Capital, LLC, TVS Investments, LLC, and US Franchise Developers, LLC are alter egos of T. Stottlemyre. (*Id.* ¶¶ 19–26.) Keystone Advisors, LLC, Finance Concepts, LLC, Koibito Franchise, LLC, Lab-Gen Finance, LLC, Arizona Science Property Holdings, LLC, Genome Finance, LLC, Genomics, LLC, Pharma-Labs Finance, LLC, DNA Finance, LLC, PharmCo, LLC, and E-Academies, LLC are alter egos of both Edson and T. Stottlemyre. (*Id.* ¶¶ 28–38.)

Adam Shorr was a business consultant for Tesis. (*Id.* ¶ 51.) Defendant A&E Czech Enterprises, LLC ("A&E Czech") is an alter ego of Shorr. (Doc. 80 ¶ 52.) John Gautereaux ("J. Gautereaux") was a Senior Business Development Executive for Tesis and a beneficial owner of Tesis with Michael Gautereaux ("M. Gautereaux") through Quant BPO, LLC, a member of Tesis. (*Id.* ¶¶ 54, 55.)

Plaintiffs Xcellerant TLC 1, LLC, Xcellerant TLC 2, LLC, and JJS Investments, LLC (collectively, "Plaintiffs") invested $32 million in Tesis between September 2021 and January 2022. (*Id.* ¶ 133.) In September 2024 Edson, Shorr, and J. Gautereaux were federally indicted. (*Id.* ¶ 65.) Plaintiffs learned the extent of Defendants' conduct when the indictment became public. (*Id.* ¶¶ 142–144.) Plaintiffs then filed suit on June 20, 2025 (Doc. 1) and the FAC on December 15, 2025 (Doc. 80). They accuse Defendants of securities fraud, common law fraud, consumer fraud, breach of fiduciary duty, negligent misrepresentation, breach of contract, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil conspiracy, aiding and abetting fraud, and negligence resulting in substantial financial losses to Plaintiffs.

Now before the Court are:

1. Defendants Stottlemyres' motion to dismiss (Doc. 87), which is fully briefed (Docs. 98, 105).[1] This motion is denied as moot for the reasons stated herein.
2. Defendants Atomic Social, LLC, Koibito Cares, Best Poke, LLC, Advanced Investing Solutions, LLC, Stott Investment Group LLC, TVS Capital, LLC,

[1] Oral argument is denied for Docs. 87, 89, 108 because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

US Franchise Developers LLC, Keystone Advisors, LLC, Finance Concepts, LLC, Koibito Franchise, LLC, Genomics, LLC, Lab-Gen Finance, LLC, Pharma-Labs Finance, LLC, E-Academies, LLC, Arizona Science Properties Holdings LLC, DNA Finance, LLC, Genome Finance LLC, PharmCo LLC, Stottlemyre International, LLC, and TVS Investments, LLC's ("Entities") motion to dismiss (Doc. 88), which is fully briefed (Docs. 97, 106). This motion is denied as moot for the reasons stated herein.

3. Defendants Edson and United Global Success, LLC's ("United Global") motion to dismiss (Doc. 89), which is fully briefed (Docs. 99, 107). This motion is denied as moot for the reasons stated herein.

4. Plaintiffs' motion for leave to file a second amended complaint ("SAC") (Doc. 108), which is fully briefed (Docs. 110, 111, 112). This motion is granted for the reasons stated herein.

5. Defendant M. Gautereaux's motion to set aside default (Doc. 124), which is fully briefed (Docs. 131, 132). This motion is granted for the reasons stated herein.

6. Defendant J. Gautereaux's motion to set aside default (Doc. 125), which is fully briefed (Docs. 127, 130, 133). This motion is granted for the reasons stated herein.

7. Defendant Shorr's motions to set aside default (Docs. 128, 134), and Plaintiffs' combined response and motion to strike (Docs. 129, 135). Shorr's first motion is granted but his second motion is denied and Plaintiffs' motion is granted for the reasons stated herein.

## II. Motion to Amend

Plaintiffs seek leave to amend their complaint (Doc. 108), which the Stottlemyres and the Entities (Doc. 110) and Edson and United Global (Doc. 111) oppose. Plaintiffs request that if the Court grants this motion that Defendants' motions to dismiss be denied as moot. (Doc. 108 at 6.)

**A. Legal Standard**

The Court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When assessing the propriety of a proposed amended pleading, the Court considers factors such as "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citation omitted). The Court performs this analysis "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

**B. Analysis**

**1. Bad Faith**

Plaintiffs argue there is no bad faith present and mainly rely on the fact that there was no undue delay as discussed below. (Doc. 108 at 4–5.) The Stottlemyres and the Entities discuss bad faith in relation to undue delay. (Doc. 110 at 12–14.) Edson and United Global respond that Plaintiffs' failure to attach the proposed SAC to their response to Defendants' motions to dismiss is evidence of bad faith. (Doc.111 at 9–10.) Edson and United Global assert that this decision was tactical to gain the advantage of assessing Defendants' legal positions. (*Id.*)

The Court finds no bad faith here. Plaintiffs did not gain an advantage by obtaining Defendants' replies to the motions to dismiss. Defendants provided detailed notice of their perceived deficiencies with the FAC both before and after the meet and confer and Plaintiffs had Defendants initial motions. As discussed in the next factor, the SAC is largely based on materials not available before the filing of the FAC and thus the delay is not evidence of bad faith but of the reality of unfolding litigation. This factor does not weigh against granting leave to amend.

**2. Undue Delay**

Plaintiffs argue there is no undue delay because the proposed SAC includes facts unavailable at the time of the FAC including from defendant Ronald King's plea agreement and an amended superseding indictment from January 6, 2025, and evidence from

dismissed defendant Tina Wells on February 13, 2026. (Doc. 108 at 4–5.) Plaintiffs also argue that they acted promptly after Defendants filed their motions to dismiss on January 16, 2026. (*Id.*) Defendants respond that Plaintiffs unduly delayed by filing this motion after the parties' meet and confer, Plaintiffs' FAC, and Defendants' motions to dismiss. (Doc. 110 at 12–14; Doc. 111 at 10–11.)

In evaluating undue delay, the Court asks "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). "[D]elay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding a delay of two years was not enough standing alone to support denial).

The Court finds no undue delay. The amendments contained in the proposed SAC are largely based on materials unavailable at the time of the original pleading or the FAC. The Stottlemyres and the Entities concede that King's plea agreement and the superseding indictment are the source for much of the SAC's additions and neither were available until after the redlined FAC was circulated. (Doc. 110 at 4, 14.) Then the amended superseding indictment and information from Wells was not available until after Defendants had filed their motions to dismiss. (*Id.* at 4.) Plaintiffs, therefore, could not have offered this proposed version of the complaint before. That Defendants had to brief motions to dismiss directed towards the FAC is unfortunate but because Plaintiffs' request to amend was not unduly delayed, this does not weigh against granting leave to amend.

**3. Prejudice**

Plaintiffs argue there is no prejudice to Defendants because Defendants have not filed an answer, no discovery has occurred, the Court has not entered a scheduling order or set a trial date. (Doc. 108 at 6.) Defendants respond that the cost of briefing the motions to dismiss that would be mooted and re-briefing the motions directed toward the SAC is prejudicial. (Doc. 110 at 15–17; Doc. 111 at 10–11.) "Prejudice to the opposing party is

the most important factor." *Jackson*, 902 F.2d at 1387. "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

The Court does not find that Defendants have been prejudiced. Defendants have not filed an answer, there has been no discovery, nor has a trial date been set. *DCD Programs*, 833 F.2d at 188 (finding no prejudice where the "case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled"). Nor does the proposed SAC add new defendants. *See DCD Programs*, 833 F.2d at 187 (stating that adding a new party "poses an especially acute threat of prejudice to the entering party"). This suit is in the beginning stages and amendment now rather than at a later stage better ensures a decision on the merits without inordinate prejudice to Defendants. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (noting the purpose of Rule 15(a) is "to facilitate decision on the merits, rather than on the pleadings or technicalities." (quotation omitted)).

**4. Futility**

Plaintiffs argue that amendment is not futile because the SAC directly addresses the arguments from Defendants' motions to dismiss. (Doc. 108 at 7–10.) Defendants respond that amendment is futile because Plaintiffs' claims lack sufficient legal and factual bases which is incurable. (Doc. 110 at 5; Doc. 111 at 5.)

The Court "should grant leave to amend unless it appears beyond doubt that the plaintiff's proposed amended complaint would not remedy the deficiencies in the previous complaint." *Adam v. Hawaii*, 235 F.3d 1160, 1164 (9th Cir. 2000). The standard of review for futility is essentially that undertaken by a court in determining the sufficiency of a pleading in a Rule 12(b)(6) motion to dismiss. *Hoang v. Bank of America, N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018).

**i. Timeliness**

Amendment would be futile "when the claims are barred by the applicable statute of limitations." *Hoang v. Bank of America, N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)) Defendants

argue that the claims in Counts I, II, III, IV, and VII are time-barred because the alleged misrepresentations occurred outside the statute of limitations period. (Doc. 110 at 5–7; Doc. 111 at 5–6.) Count III (common law fraud) has a three-year statute of limitations. *See* A.R.S. § 12-543(3). Count I (federal securities fraud), Count II (state securities fraud), and Count VII (negligent misrepresentation) have a two-year statute of limitations. *See* 28 U.S.C. § 1658(b)(1); A.R.S. §§ 12-542, 44-2004(B). Count IV (consumer fraud) has a one-year statute of limitations. *See* A.R.S. § 12-541(5).

Defendants assert that these causes of action began to accrue on one of three dates when Plaintiffs knew or should have known of any alleged misrepresentations: (1) early October 2021, when it was clear that Defendants had not filed anything with the Securities and Exchange Commission ("SEC"); (2) October 22, 2021, when Plaintiffs discussed the Medicare rate drop with T. Stottlemyre; or (3) November 22, 2022, when Plaintiffs received Tesis's financials showing the inaccuracy of T. Stottlemyre's revenue projections. (Doc. 110 at 5–6.) According to Defendants, because Plaintiffs filed the initial complaint on June 20, 2025, all claims would be outside of the limitations period except for Count III because the three-year statute of limitations encompasses the November 22, 2022, misrepresentation. (*Id.* at 8.)

Plaintiffs reply that Defendants' proposed accrual dates represent isolated facts that individually did not alert Plaintiffs to an injury and its cause. (Doc. 112 at 2–3.) For example, the fact that Plaintiffs knew of the Medicare rate drop on October 22, 2021, did not make them aware, at that time, of Defendants fraudulent scheme. (*Id.*) The Court agrees. At this stage, any untimeliness is not clear on the face of the SAC. *See United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) ("A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute [of limitations] is apparent on the face of the complaint." (quotation omitted)).

Additionally, Defendants argue that the SAC does not relate back to the initial complaint because the Plaintiffs have been substituted and thus these claims are time-

barred because. (Doc. 110 at 7–8; Doc. 111 at 5–6.) The original plaintiffs were Delaware LLCs Xcellerant Fund I, LLC and Xcellerant Fund II, LLC. (Doc. 1 ¶¶ 9–10.) The current Plaintiffs are Arizona LLCs Xcellerant TLC 1, LLC and Xcellerant TLC 2, LLC. (Doc. 108-2 ¶¶ 9–10.)

Even assuming, as Defendants argue, that the current Plaintiffs are being added outside the limitations period, the amendment is not futile because the current Plaintiffs relate back to the filing of the original complaint. An amended complaint adding a new plaintiff relates back where "1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff." *Immigrant Assistance Project of Los Angeles Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 857 (9th Cir. 2002) (quoting *Rosenbaum v. Syntex Corp.*, 95 F.3d 922, 935 (9th Cir. 1996)).

All the elements for relation back are satisfied. First, the original complaint gave notice to all Defendants because the SAC is based on the same operative facts—Plaintiffs' investment of $32 million—and does not add claims or defendants. As such, Defendants are not unfairly prejudiced. Defendants have been aware of and actively litigated against these claims from the start and the relation back does not change the litigation for Defendants. Lastly, there is an identity of interest between the current Plaintiffs and the original plaintiffs because both have the same two principals, represent the same investments, the same losses, and the same legal theories. Amendment of these claims is not futile.

**ii. Pleading of Scienter**

The Stottlemyres argue that the SAC fails 15 U.S.C. § 78u-4(b)(2)(A)'s requirement "to state with particularity facts giving rise to a strong inference that [T. Stottlemyre] acted with the requisite state of mind" for Count I (federal securities fraud). (Doc. 110 at 8–9.) "To satisfy the requisite state of mind element, a complaint must allege that the defendant[ ] made false or misleading statements either intentionally or with deliberate recklessness."

*In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (internal citation marks and quotation omitted).

The SAC alleges the necessary facts regarding T. Stottlemyre. As one example, the SAC alleges that "on or about September 25, 2021, Defendant Todd Stottlemyre told Ethan Frey that Plaintiffs' $5 million follow-on investment needed to be wired by September 30, 2021, due to a purported SEC quarterly reporting deadline." (Doc. 108-2 ¶ 277.) But "[t]his statement was materially false because no such SEC deadline existed" and was used to secure Plaintiffs' immediate investment. (*Id.* ¶ 278.) This allegation alone gives rise to a strong inference that T. Stottlemyre acted intentionally or with deliberate recklessness.

**iii. Tender of Securities**

The Stottlemyres argue that amendment to Count II (state securities fraud) is futile because the SAC contains no allegation of tender of the securities. (Doc. 110 at 9.) Tender, however, is not a pleading requirement. Rather, "tender of the original shares is little more than a technical requirement." *Grand v. Nacchio*, 147 P.3d 763, 777 (Ariz. Ct. App. 2006). "Arizona courts have generally not required tender until the beginning of trial." *Id.* Plaintiffs have until the beginning of trial to tender the securities. Amendment of this claim is not futile.

**iv. Rule 23.1 Pleading Requirements**

The Stottlemyres and the Entities argue that Count V (breach of fiduciary duty of care), Count VI (breach of fiduciary duty of loyalty), and Count XI (negligence) are derivative claims, not direct, and that Federal Rule of Civil Procedure 23.1's pleading requirements have not been met. (Doc. 110 at 9–10.) Plaintiffs assert these claims are direct and that Rule 23.1 is thus inapplicable. (Doc. 108 at 8–9.)

"[T]he characterization of an action as derivative or direct is a question of state law." *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987). Because Tesis is a Delaware LLC, the parties agree Delaware law applies. (Doc. 110 at 10; Doc. 112 at 7.) Under Delaware law, the analysis to distinguish between direct and derivative actions "must be based solely on the following questions: Who suffered the alleged harm—the

corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). "If the corporation alone, rather than the individual stockholder, suffered the alleged harm, the corporation alone is entitled to recover, and the claim in question is derivative." *Feldman v. Cutaia*, 951 A.2d 727, 732 (Del. 2008.) "Conversely, if the stockholder suffered harm independent of any injury to the corporation that would entitle him to an individualized recovery, the cause of action is direct." *Id.* "[T]he plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large." *Id.* at 733.

Count V (breach of fiduciary duty of care) of the SAC alleges "Plaintiffs suffered damages as a direct result of Defendants' breaches of their fiduciary duty of care, including the loss of more than $32 million in investment funds." (Doc. 108-2 ¶ 409.) Count VI (breach of fiduciary duty of loyalty) alleges "[t]hese breaches of the duty of loyalty directly and proximately caused substantial injury to Plaintiffs, including the devaluation and ultimate loss of their investment, and forced association with a fraudulent enterprise that harmed their professional and financial reputations." (*Id.* ¶ 417.) Count XI (negligence) alleges "As a direct and proximate result of the breaches of duty . . . Plaintiffs suffered damages exceeding $32 million, including the loss of their entire investment in Tesis."

The SAC makes clear that Plaintiffs, not Tesis, suffered the alleged harm and that Plaintiffs, not Tesis, would receive the benefit of the recovery or other remedy. Plaintiffs allege they lost $32 million, a harm not generally shared by other shareholders. Plaintiffs have not alleged a generalized harm that would enable other shareholders to recover in proportion with their ownership interest. *Feldman*, 951 A.2d at 733 ("Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature.") These claims are direct, not derivative, and thus Rule 23.1 is inapplicable. Accordingly, amendment of these claims is not futile.

**v. RICO Claim**

The Stottlemyres argue that Plaintiffs fail to plead RICO standing or the required predicate acts of racketeering by T. Stottlemyre. (Doc. 110 at 10–11.) Edson argues that the RICO claim fails for lack of standing and proximate cause because the SAC "fails to plead with particularity two predicate acts personally committed by Edson that directly caused Plaintiffs' investment losses." (Doc. 111 at 6–7.)

First, Plaintiffs have alleged standing. 18 U.S.C. § 1964(c) states in part that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." The Stottlemyres point to the following statement in the SAC to argue that Plaintiffs have no standing: "To the extent any predicate act could be construed as related to Plaintiffs' investments, Plaintiffs expressly disavow reliance on any such act for RICO purposes." (Doc. 108-2 ¶ 469.) This statement, however, is to clarify that the predicate acts are not based on securities fraud but on wire fraud.

A pattern of racketeering activity "requires at least two acts of racketeering activity," 18 U.S.C. § 1961(5). Plaintiffs allege multiple instances of wire fraud committed by both T. Stottlemyre and Edson. (*Id.* ¶¶ 167–69, 180, 182, 280–81, 358, 456 (T. Stottlemyre) 146, 160, 446–48, 456 (Edson)). Defendants' arguments to the contrary are unavailing. Thus, Plaintiffs have alleged the requisite predicate acts for a RICO claim.

Lastly, Plaintiffs also plead proximate causation. Plaintiffs allege that because of Defendants' wire fraud, "Plaintiffs suffered damages exceeding $32 million, including the loss of their entire investment." (*Id.* ¶ 470.) Defendants' alleged acts of wire fraud and participation in the conspiracy caused damage to Plaintiffs and so amendment of this claim is not futile.

**vi. Conspiracy and Aiding-and-Abetting Claims**

The Stottlemyres argue that under Arizona law there is no independent claim for civil conspiracy, Count IX, or aiding and abetting, Count X. (Doc. 110 at 12.) Edson argues the SAC is insufficient for the conspiracy count because it fails to allege that he "knowingly entered into a conscious agreement with any other defendant to commit fraud." (Doc. 111

at 7.) Edson argues the aiding and abetting claim fails because it "impose[s] both primary and secondary liability on Edson based on the same alleged conduct." (*Id.*)

Here, the conspiracy and aiding and abetting claims in the SAC are tied to the tort of common law fraud which disposes of the Stottlemyres' main argument. (Doc. 108-2 ¶¶ 473, 479.) Further, the SAC alleges an agreement involving both T. Stottlemyre and Edson. (Doc. 108-2 ¶¶ 475–78, 483–84, 495.) Whether Plaintiffs can prove this agreement by clear and convincing evidence is not a question for today. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 37 (Ariz. 2002).

Lastly, for the aiding and abetting claim, the SAC sufficiently distinguishes T. Stottlemyre's and Edson's primary liability for fraud and their actions of aiding and abetting others to commit fraud. For Edson, the SAC specifically distinguishes Edson's misrepresentations to Plaintiffs in pitch meetings and investor communications—his acts of fraud—from his approval of King's sham marketing wire payments—his aiding and abetting of King's fraud. (Doc. 108-2 ¶¶ 501, 504.) Amendment of these claims is not futile.

**vii. Negligent Misrepresentation Claim**

Edson argues that the SAC does not establish Edson had a duty to Plaintiffs or identify any negligent statements by him. (Doc. 111 at 7–8.) The Court disagrees. The SAC clearly alleges specific statements by Edson (Doc. 108-2 ¶¶ 146–48, 160–62) and contrary to Edson's assertion the SAC does "describe when, to whom, or under what circumstances such a statement was made" (Doc. 111 at 8.) The context of these statements, providing investment information to Plaintiffs, establishes Edson's duty. "Arizona defines the tort of negligent misrepresentation in accordance with the Restatement (Second) of Torts § 552." *In re Allstate Life Ins. Co. Litigation*, 971 F. Supp. 2d 930, 945 (D. Ariz. 2013). Restatement § 552(1) provides that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for

> pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"[A] sufficient basis for duty of care is found in public policy evidenced by Restatement § 552." *Sage v. Blagg Appraisal Co.*, 209 P.3d 169, 174 (Ariz. Ct. App. 2009). Accordingly, amendment of this claim is not futile.

**viii. Alter Ego Claim**

The alter ego doctrine is generally applied between private parent and subsidiary corporations or between a private corporation and one of its shareholders. *See, e.g., Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991); *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972). The rationale is that a corporation should not be used to shield assets or avoid liability for fraud or other tortious conduct. *See Dietel*, 492 P.2d at 728 ("If a corporation was formed or is employed for fraudulent purposes then clearly the corporate fiction should be disregarded.").

Plaintiffs may seek derivative liability under an alter ego theory if they can "prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Jes Solar Co. Ltd. v. Manitee Energy Inc.*, No. 12-CV-626-TUC-DCB, 2019 WL 2869666, at *9 (D. Ariz. July 3, 2019). "Arizona courts consider various factors when determining whether unity of interest and ownership exists under the alter ego doctrine, such as commingling of personal and corporate funds and assets, failure to keep funds from various entities separate, and unauthorized diversion of corporate funds or assets for non-corporate purposes." *Id.* at *8. At the motion to dismiss stage, a plaintiff alleging alter ego liability "must do more than make conclusory statements regarding an alter ego relationship between individual and corporate defendants; the plaintiff must allege specific facts supporting application of the alter ego doctrine." *Barba v. Lee*, No. 09-CV-1115-PHX-SRB, 2009 WL 8747368, at *4 (D. Ariz. Nov. 4, 2009).

United Global argues that Plaintiffs fail to allege unity of interest and ownership between Edson and United Global because the SAC "fail[s] to allege commingling, misuse of United Global, or any specific fraudulent conduct by the entity itself." (Doc. 111 at 8.)

However, the SAC alleges that Edson has control over United Global and that United Global owns Keystone Advisors, which holds a member interest in Tesis. (Doc. 108-2 ¶¶ 557, 562.) Thus, it is alleged that Edson has a beneficial interest in Tesis through United Global. (*Id.*) Then "United Global . . . was the ultimate beneficiar[y] of the $4,747,770 redemption paid to Keystone Advisors from Plaintiffs' January 2022 investment." (*Id.*) This redemption "was used to enrich Edson." (*Id.*) Taking the facts alleged in the complaint as true, as the Court must, Plaintiffs have alleged misuse of United Global by alleging that Edson used United Global to obtain the fraudulently induced investment from Plaintiffs. *See Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972) ("If a corporation . . . is employed for fraudulent purposes then clearly the corporate fiction should be disregarded.") Accordingly, amendment of this claim is not futile.

**5. Previous Amendments**

Plaintiffs argue the last factor is inapplicable because the Court has not granted Plaintiffs leave to amend previously but rather Plaintiffs amended as a matter of right. (Doc. 108 at 6.) Defendants characterize the proposed SAC as Plaintiffs' third attempt at amendment. (Doc. 110 at 14–15; Doc. 111 at 11–12.)

"[A] district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint." *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980). Here, the Court has not previously granted Plaintiffs leave to amend, they did so as of right. Accordingly, this factor does not weigh against granting leave to amend.

**6. Balancing the Factors**

None of the factors weigh against granting leave to amend. Accordingly, the Court grants Plaintiffs' motion.

Because the Court grants Plaintiffs' motion, it also denies Defendants' motions to dismiss as moot. *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099, 1108 (W.D. Wash. 2023) ("The filing of an amended complaint generally moots a pending motion to dismiss unless the amended complaint is substantially identical to the original complaint."); *see*

*also Stiff v. Wilshire Credit Corp.*, No. CV05-00462-PCT-MEA, 2005 WL 2886025, at *1 (D. Ariz. Nov. 1, 2005) ("An amended complaint supersedes a previous complaint rendering a motion to dismiss the original complaint moot." (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1991))).

**III. Motions to Set Aside Default**

M. Gautreaux, J. Gautreaux, and Shorr each filed an answer to Plaintiffs' initial complaint. (Docs. 38, 43, 47.) Plaintiffs then filed the FAC on December 15, 2025. (Doc. 80.) These Defendants failed to timely answer and Plaintiffs applied for entry of default against M. Gautreaux, J. Gautreaux, and Shorr, among others, on April 20, 2026 (Doc. 119) which the clerk entered on April 22, 2026 (Doc. 122). Now each requests the Court set aside the Clerk's entry of default. (Docs. 124, 125, 127, 128, 134.)

**A. Legal Standard**

Federal Rule of Civil Procedure 55(c) allows the Court to set aside an entry of default for good cause. The Court has broad discretion to do so. *Brady v. United States*, 211 F.3d 499, 503 (9th Cir. 2000). Generally, default judgments are strongly disfavored and, when possible, cases should be decided on their merits. *Meadows v. Dominica Republic*, 817 F.2d 517, 521 (9th Cir. 1987). When evaluating whether good causes exists, the Court considers three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether the party had no meritorious defense; and (3) whether setting aside the default would prejudice the other party. *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004). Because these factors are disjunctive, "[a] sufficient finding against the movant on any one factor negates good cause." *FOC Fin. Ltd. P'ship v. Nat'l City Com. Cap. Corp.*, 612 F. Supp. 2d 1080, 1082 (D. Ariz. 2009).

**B. Analysis**

**1. M. Gautereaux and J. Gautereaux**

The Court finds no culpable conduct on the part of either M. Gautreaux or J. Gautreaux. A defendant's conduct is "culpable for purposes of the [good cause] factors

where there is no explanation of the default inconsistent with devious, deliberate, willful, or bad faith failure to respond." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). M. Gautreaux and J. Gautreaux relocated and took the reasonable step to file a USPS forwarding address. Additionally, the Court credits the fact that both M. Gautreaux and J. Gautreaux answered Plaintiffs' initial complaint. Nothing about M. Gautreaux or J. Gautreaux's failure to timely answer suggests they acted willfully or in bad faith.

M. Gautreaux and J. Gautreaux have presented a meritorious defense including their lack of involvement in and responsibility for the alleged misconduct. "All that is necessary to satisfy the 'meritorious defense' [factor] is to allege facts that, if true, would constitute a defense." *U.S. v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1095 (9th Cir. 2010). Given that "judgment by default is a drastic step appropriate only in extreme circumstances" and that cases "should, whenever possible, be decided on the merits," *id.* at 1091 (quotation marks omitted), the Court concludes that M. Gautreaux and J. Gautreaux have done just enough, for Rule 55(c) purposes, to establish that meritorious defenses potentially exist. Whether those defenses will ultimately prevail is a different question for a different day.

Setting aside default would not prejudice Plaintiffs. Plaintiffs' arguments to the contrary ring hollow. As to M. Gautreaux and J. Gautreaux, Plaintiffs assert that the litigation is too far along to set aside default but not so far along that they cannot file an amended complaint as to other Defendants. A plaintiff is prejudiced if his ability to pursue his claim has been "hindered" due to delay resulting in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Grp. Life Ins. Plan*, 244 F.3d at 701. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *Id.* Again, the Court points out that no discovery has occurred and no trial date has been set. Broadly, the delay in this case was quite short in the overall scheme of the litigation and there has been

no specific showing of loss of evidence or any other reason that during the short period of delay Plaintiffs' ability to litigate this case has been prejudiced. Accordingly, the Court grants M. Gautreaux and J. Gautreaux's motions to set aside default.

**2. Shorr**

Shorr requests the Court set aside the Clerk's entry of default. (Docs. 128, 134.) The Court's analysis of Shorr's motion is nearly identical to that of M. Gautreaux and J. Gautreaux's. The Court finds no culpable conduct on behalf of Shorr, he has raised meritorious defenses involving his lack of involvement and responsibility, and Plaintiffs will not be prejudiced.

Shorr, however, also raised objections to improper service regarding A&E Czech, an alleged alter ego of Shorr. A&E Czech, as an LLC, must be represented by counsel and Shorr cannot make representations on A&E Czech's behalf. *Theodore J. Hogan & Assocs., LLC v. Ariz. Corp. Comm'n*, No. CV 11-01530-PHX-FJM, 2011 WL 4578344, at *2 (D. Ariz. Oct. 4, 2011) ("[A]n LLC cannot represent itself but must be represented by counsel."). Accordingly, Plaintiffs' motion to strike any potions of the motion that seek relief on behalf of A&E Czech is granted.

Lastly, Shorr filed a second motion to set aside. (Doc. 134.) Because this motion is redundant and the Court is granting the requested relief, that motion is denied.

**IT IS ORDERED t**hat Plaintiffs' motion for leave to file a SAC (Doc. 108) is **GRANTED**. **IT IS FURTHER ORDERED** that Defendants' motions to dismiss (Docs. 87, 88, 89) are **DENIED** as moot.

**IT IS ORDERED** that Defendant M. Gautereaux's motion to set aside entry of default (Doc. 124) is **GRANTED**. The Clerk's April 22, 2026 entry of default (Doc. 122) is hereby **VACATED**. **IT IS FURTHER ORDERED** that Defendant M. Gautereaux shall answer or otherwise respond to Plaintiffs' second amended complaint within 14 days of service of that complaint.

**IT IS ORDERED** that Defendant J. Gautereaux's motion to set aside entry of default (Doc. 125) is **GRANTED**. The Clerk's April 22, 2026 entry of default (Doc. 122)

is **VACATED**. **IT IS FURTHER ORDERED** that Defendant J. Gautereaux shall answer or otherwise respond to Plaintiffs' second amended complaint within 14 days of service of that complaint.

**IT IS ORDERED** that Defendant Shorr's motion to set aside entry of default (Doc. 128) is **GRANTED** and second motion is **DENIED** (Doc. 134). The Clerk's April 22, 2026 entry of default (Doc. 122) is hereby **VACATED**. **IT IS FURTHER ORDERED** that Defendant Shorr shall answer or otherwise respond to Plaintiffs' second amended complaint within 14 days of service of that complaint.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to strike (Doc. 129) is **GRANTED**.

Dated this 13th day of August, 2026.

Douglas L. Rayes
Senior United States District Judge